EasternDis'ct
*March*, 1827.

JEWETT
*vs.*
DAVIS & AL.

---

## LOBRE vs. POINTZ.

APPEAL from the court of the parish and city of New Orleans.

PORTER, J. delivered the opinion of the court. The petitioner states that he accepted a draft of one Bryarly, at the instance and request of the defendant, who asserted that Bryarly was an honest man, and would punctually and faithfully pay any engagement he might contract.

If A recommends to B, C stating that he is an honest man, and would pay the debt he might contract, in case of C's insolvency, A is not responsible.

The general issue was pleaded, and the court below, after hearing testimony, gave judgment against the plaintiff, who appealed.

The evidence shows, that Bryarly was in treaty with the plaintiff to purchase some groceries, and that the defendant, at the request of Bryarly, asked the plaintiff if he intended to let him (Bryarly) have them, and that he replied he believed he should.

It does not appear, whether these groceries were furnished or not; but in relation to the draft which forms the subject of the present suit, it is proved by one of the clerks of the plaintiff, that Bryarly came to the store of the plaintiff, and requested the loan or advance of $500, or $600, and that he would pay it on his return to the city next fall. This loan was refused; upon which, Bryarly went to look for the defendant, and brought him to the store of the plaintiff. The defendant, on coming there, told the plaintiff that Bryarly was an honest man, that he might be trusted with safety to whatever amount he might wish, for that he was an honest man and would pay him, and that if the defendant had the money himself he would lend it to Bryarly.

On this statement, the plaintiff accepted the draft.

EasternDis'ct
March,1827.

LOBRE
vs.
POYNTZ.

It is satisfactorily proved, that Bryarly had at the time this recommendation was given, the character of an honest man; but it was proved that he was embarrassed in his affairs. Whether this was known to the defendant, is not shown.

The general principles of law on this subject, are perfectly well settled. That mere advice will create no obligation; and that counsel given, unless it be fraudulent, will not render the person giving it, responsible for any consequences that may result from others acting under it, are almost maxims of our jurisprudence. There is frequently, however, difficulty in the application of these principles to particular cases; where, from the terms used, it is hard to distinguish mandate, from advice. We think the case before us, is of the latter kind. The language used by the defendant, goes no further than opinion. A strong one, to be sure; but one which cannot make him responsible for the debt contracted, if the intention of the parties was, that the plaintiff should have the benefit of the knowledge the defendant had of Bryarly, and he gave it honestly. Now, if it had been in their contemplation, that the defendant should have become su-

rety for the debt, other language, we must presume, would have been used. The plaintiff would not have been satisfied with an opinion; the principal was able to pay, and would pay; but would have required an engagement, that if the principal did not pay, the surety would. The case before us is almost exactly that put by *Pothier*. In his contract of mandate, after stating that "if you write to another, to lend a friend a sum of money in your place, it will amount to a mandate;" he adds: "*Mais si je vous avois seulement dit: Vous pourrez preter surement a Pierre la somme qu'il vous demande a emprunter; c'est un honnete homme, qui est tres solvable et qui merite qu'on lui rende service; ces termes ne renferment qu'un conseil d'ou il ne nait aucune obligation.*" *Pothier, traite du contrat du mandat,* No. 21. *Dig.* 50. tit. 17. *L.* 47.

The case of *Amory* vs. *Boyd*, cited by plaintiff's counsel, requires some notice from the court. There, the person to whom the money was advanced, was wholly unknown to the plaintiff, and he was introduced by a letter from the defendant in the following words: "Captain M. Leary, being unacquainted at

New Orleans, will be indebted to your politeness in affording him such assistance as his present situation may require; and a bill on his father for the funds he may need for his present necessities will be honored forthwith." The court thought these expressions amounted to more than a mere recommendation, and advice, and the plaintiff recovered. A comparison of the language used there with that of this case, shows the former of a more positive kind. No opinion is expressed in it. It is direct, and unqualified. To say the least, it was ambiguous, and the party to whom the letter was directed, had no choice but to advance the money or suffer the person who was recommended to him to be without the means of subsistence. Here, if any engagement on the part of the defendant was contemplated, it is impossible to believe the plaintiff would have remained satisfied with an opinion of the responsibility of the person to whom the money was advanced. But that case carried the doctrine of responsibility as far as we are prepared to go, or as the law will warrant. The case before us is several shades weaker, and cannot be governed by it. It falls clearly within the principle *consillii non fraudulenti, nulla obligatio.*

It is therefore ordered, adjudged and decreed, that the judgment of the parish court be affirmed with costs.

*Waggaman* for the plaintiff, *Grymes* for the defendant.